which is Williams v. Stewart Title Company and that is case 19-1129. Good afternoon. Mr. Bredahl, we're ready to hear you if you're ready to be heard. Okay. Okay. Good morning members of the court. Richard Podol representing Golan Williams and with me at council table is Robert Kitzmiller. Council. Yes. I started thinking about your case yesterday when I was revisiting the case and I asked you do we need to abate this case until the Colorado Supreme Court needs to decide whether to grant cert or not? I don't think so, your honor. The fraud judgment was already reversed by the Court of Appeals. There's a question I ask is under the Rooker-Feldman doctrine, federal courts are not in a position to review the judgments of state courts. In other words, you don't appeal to the US Circuit Court of Appeals decisions of the Colorado Court of Appeals or the Colorado Supreme Court. That Rooker-Feldman prohibits us from doing that. Yes, your honor. And the only question is, is this case final? And because the petition for cert at the Colorado Supreme Court is still pending, as I understand it still is? It's been fully briefed and pending since June. All right. So it seems to me that until the court decides whether it's going to grant cert, we don't really know whether we have a final judgment of a state appellate court yet. And that's what raised my question as to whether Rooker-Feldman applies. And if it does, whether the state court decision, we have to await a final decision. I don't think so, your honor. The reason I don't is that the fraud judgment is reversed. It was no cross petition for cert was filed, so that's final. The only thing that's remaining is the judgment on a contract. And the issue there is a contract or the alleged contract was a seller's affidavit with a unilateral indemnity clause. It has nothing to do with a title search. It has nothing to do with the agent's responsibility in this case. In other words, it wouldn't have... You, on our part, basically gives you a second bite at the end. No, your honor. I don't believe that's correct. And the reason that's not correct is that the claims on vicarious liability were not presented to the jury in the state court action, number one. Number two, the one claim we had where we sought to impose a duty on the underwriter, okay, to provide a reasonable title examination was a negligence per se claim. That was dismissed prior to trial and that claim didn't go to the jury. So what we have here is the primary claim is a three-party contract between the limited agent, the title agent, the seller, and the buyer that imposes the contractual duty of conducting a reasonable title examination upon the title agent. That was not an issue in the state court action. It's at issue here. So we have the only issue here on the dismissal is the determination that the underwriter and the limited agent were in privity in the state court action. And frankly, that is a very factually intensive determination that was never analyzed by the trial court. What the trial court did was to look at the newly disclosed fact that these were parent and subsidiary and say that's enough. That's not enough. Well, the courts generally do not favor duplicitous litigation. True. And because of that, there are all kinds of procedural rules that mandate that all rights and defenses, all rights, claims, and defenses have to be asserted in one case. Yet parties are not allowed the liberty of trying segments of a case in one court, not liking the decision, and then trying the rest of the case in another court. Even worse, as my question on Rooker-Feldman implies, we abhor the potential for competing results between the states and on a case and we rule another on a case. Right. And so for that reason, the courts disfavor litigants playing these kinds of games. And I don't mean to suggest through my question that you're playing games, but the effect is not good. Your The title agent, it's a very limited agency, was not a party to the Boulder case. Secondly, was it raised as a defense? Was that issue litigated? Was that, even more importantly, was it presented to the state courts? Was what issue presented to the state court, your honor? The issue of the until deep into the case. We asked in discovery, what's the relationship between these two parties? And the answer we got back is the title agent is a very limited agent. The agency is limited to issuing policies and commitments on behalf of the underwriter. Title searchers are specifically excluded, and they're totally different entities, and the underwriter does not control the agent. That's what we were told in discovery in the state court case. That was during the time that the proceedings were still pending in state court at the trial level, and you could have raised, albeit at a late stage of the proceedings, it could have been raised in state court. Well, your honor, we were sued by the underwriter. We could have joined the agent, okay, as a voluntary plaintiff, whatever, okay? Initially, we didn't see a reason to do that, because initially we believed that the underwriter would be responsible for the negligent title search of the agent, which was a central issue. We only learned very late in the case that we were not going to be able to present that issue to the jury, I mean, maybe a week before a scheduled trial date, after the case had been pending for two years. And the privity issue, the privity analysis, really centers around, first, the scope of the agency. This is very limited. The Supreme Court, in its 2017 decision in force of the clock, points out that the principal-agent relationship necessary to support privity would include that the subject matter or the acts of the agent were within the scope of agency in the state court action. That didn't occur here. Then we have the issue of near alternate. Well, I understand what the effect is, that you've got litigation going in all the courts. You've got litigation going in the Colorado Supreme Court, the U.S. District Court of Colorado, and now the Tenth Circuit. I mean, for crying out loud, next thing you're going to join the Fifth Circuit. I mean, there are federal jurisdictional principles that preclude that kind of multiplicitous litigation. Well, Your Honor, first of all, respectfully, I disagree that this is duplicative or duplicitous litigation. First of all, the agent was never sued. The agent could have been sued after the judgment in the Boulder Court. We also had jurisdiction in the federal court, okay? We could have brought a third-party complaint against the agent after the judgment in the state court. In Colorado, you're here on diversity? Yes. Because you're a... They are a Texas company. So my Fifth Circuit analogy wasn't too far off the beam, was it? Not at all, Your Honor, from that perspective. But there's nothing improper about this. A plaintiff has the choice of venue. Well, I think it's called Rooker-Feldman. Well, let me try to put this in perspective as far as a choice to bring this in federal court. We had a judgment based on fraud that was wholly inappropriate, totally contrary to Colorado law. Never should have gone to the jury, okay? We also had a... Did you argue this to the Colorado Court of Appeals? Yes, and we won. Well, so? Okay. So what are you doing here? You want us to review... What are we doing here? You're wanting us, essentially, to review the Colorado Court of Appeals. No. And you're asking us to trump the Colorado Supreme Court by deciding this case while you've got cert still pending over, you know, what is that, Colfax and Broadway, I think. Your Honor, this case is wholly different from what was decided and what went to the jury in the state court action. The issue of the title, companies, responsibility, liability... I advise you to argue your case to my two colleagues, because my mind is not closed, but it's perilously close. Your Honor, the issue in this case, the negligent title search, was not submitted to the jury. The agent was not a part to the case, to the state court case, okay? We have a right to pursue claims, except for finding a privity. This is the law. The law is, it all hinges on privity. If there is no privity, we have a right to subsequent lawsuit, and that's exactly what we're doing. To find privity, the first point of analysis is the scope of the agency. Very limited. The issue of the title search, which Judge Grimmer pointed out in his order, was the issue in the state court action, was not within the scope of the limited agency. That should preclude a finding of privity. Beyond that, if you say, okay, we're going to get beyond the agency issue, you have to have near alter ego or virtual representation. As far as near alter ego goes, the title, the underwriter did everything possible to distance itself from the agent in the state court action. They said, we're not responsible for the agent's acts. I didn't see that, and you assert that in your brief, but I didn't see any support for it, for the everything possible to, to, I didn't see any support for your suggestion that they did everything possible to disassociate. You pointed to a few statements in your brief, and that, to me, goes to the second element of privity under Colorado law, whether there was a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation. Can you explain for me why you think you've met that, they haven't met that element. There was no privity here. If you go to the allegations of the amended complaint, procedurally, in this case, we filed a complaint. The defendant filed a motion to dismiss asserting privity. We filed an amended complaint setting forth specific allegations. Motion to dismiss need to be taken as true. The allegations were the underwriter asserted, okay, in the state court action, the agency was limited to issuing title products. The underwriter asserted in the state court action, the agent disclaimed responsibility for title searches conducted by the limited agent. The underwriter asserted in the state court action that the limited agent and the underwriter were separate entities. The underwriter does not control the agent. The underwriter did not perform any title searches, okay. Those allegations need to be taken as true. They are true. Then both sides submitted evidence in, attached to their summary judgment motion, which showed more disputed issues of material facts. The key point here is this is a motion to dismiss. The factual allegations of the complaint need to be taken as true. The determination of privity, the determination of scope of agency, the determination of mere alter ego, and the determination of virtual representation are all factually intensive. You can't just blow it up and say they were subsidiary. In fact, it was never disclosed in state court action, and that's all it takes. That's not the law, okay. Basically, the Hart case, I think, addresses that very nicely. The 11th Circuit case, okay. Isn't that the case where the corporate, the parent corporation specifically disavowed a parent subsidiary relationship? That's not what happened here. Yeah, but the parent subsidiary relationship doesn't answer the question. I didn't say it did. I'm just saying I don't think that case stands for the proposition you want it to. This case really makes that point because of the extremely limited agency. The fact that they're parent subsidiary, but the fact that they have different interests. The agent's responsible for the title search, not the underwriter. That was a mantra in the state court action. That is not presenting and protecting the interests of the agent in the state court action. It's throwing the agent under the bus, which is exactly what the underwriter did. And absent of finding a privity, and I understand the concern about federal court, state court, and all of this, but we have a right to bring an action against an agent who was never brought into state court action, wasn't a party, and there's no privity and the issue of privity, because it's so factually intensive on every level, scope of agency, near alter ego, and virtual representation can't be determined on a motion to dismiss. And even if you converted it into a summary judgment, look at all of the facts that both sides attached to their motions to dismiss. Thank you, counsel. Your time has expired. I'm going the wrong way. You're going the other way. Thank you, your honor. Thank you. Good morning, your honors, and I certainly appreciate your time on the very obviously long morning. In our view, your honor, there's effectively three things a trial court could have done. It could have dismissed the case for failing to bring these exact same claims as counterclaims in the state court action. It could have dismissed the case because there is no federal jurisdiction over this case at all, because there are no damages. Or it could have stayed the case under the doctrines that the court has been talking about. But under no circumstances should Ms. Williams be allowed to litigate the exact same factual issues, the exact same conduct by the exact same people in two venues. That runs afoul of a host of reasons, and I'm reminded of words I once read somewhere that reason is the soul of all law. I think it was Thomas Hobbs that said that. That's the problem here. You very well cannot have the exact same issues, the exact same facts in two venues at the same time. Well, the last part is the question, isn't it? You said the exact same people, and they're saying that these parties were not in privity. No, I appreciate that. So that's the issue. So let's talk about that. That's the Rule 13 counterclaim dismissal. And I agree with the court, of course, that was the appropriate result. So why? The state court action. But we don't even know yet whether you've won or lost. Oh, I've won, your honor. I'm aware of it. We won in the trial court. Well, you haven't won at the Colorado Supreme Court. They could still grant cert. They could still rule against you. They certainly could. It's certainly a possibility. It's open litigation that's continuing in the Colorado state courts. That's absolutely true. That's absolutely true. But the point is it's been litigated. So as to why it's exactly the same. It's being litigated. I apologize. You're exactly correct. I thank you for the correction. It is still being litigated. It has substantially been litigated, but it is yet to see its final day. And thanks to your reference to the Fifth Circuit, I don't know that we'll ever see a final day here, your honor. But to be perfectly frank, why is this the same case? Let's talk about that. The trial court in Boulder County, we happen to have the same counsel here that would trial counsel in Boulder County. The factual allegations there were exactly the same factual allegations. There was a missed title search. The title search did not uncover a judgment lien that Ms. Williams knew about, that she was working with counsel to disclose and clean up, that she didn't disclose as part of this. So the issue there was did we miss the title search? Did we have a legal obligation to disclose the title search? The question then became did we commit an affirmative act of misrepresentation by selling title insurance policy to the purchaser of the home without telling the purchaser that there was this loan? Those were the exact issues in the case. I represented Stewart Title Guarantee Company from Houston. It was always my understanding in real estate practice 101A that the reason you got title insurance commitments before you closed the deal was to determine the status of title and satisfy the parties satisfied themselves as to the status of title. And if the title insurance company fouled up in their title insurance commitment and policy, that they were on the hook. So your Honor is more or less right, and I would say that that's the only role that Stewart Title Guarantee Company played in this case. The only fact that we did anything about was to write a check for $500,000 to protect the interests of the purchaser. That's the only thing Stewart Title Guarantee did. So you paid up. We paid up $500,000. Now we thought that was fraud. We thought that was a breach of contract, and we paid it, and then we were involuntary plaintiffs into the case, which isn't a thing, but it became a thing. And we sued for that. We recovered for that, and we've successfully defended that on appeal. But again, the actions that happened, they were all Stewart Title Company, the agent that committed, that did the title search, that did the closing. All of those actions are the same actions we're trying now in federal court. Those actions were performed by the agent. The only action performed by the title insurer or the underwriter was to write a check. No one was suing us for writing a check. They were suing us for the title search, the closing performance, and the issues of fact that happened there. Never, not once, and this is contrary to the representations by my opposing counsel in his briefing, but not once did Stewart Title Guarantee Company argue to the trial court in any form or fashion, we are not liable for the actions of the title-issuing agent. Not once was that argument raised. Not once did we say we should be off the hook because we are not vicariously liable for the actions of our agent. What about in response to the summary judgment where you said that you weren't negligent and you did not perform the title search in question and the search was performed by SDC? Right. So that fact was pointed out, but if you read the paragraph from which that sentence comes, it makes very plain that the defense that we asserted was that the search itself was not a negligent search, and it was on that basis. So that claim wasn't dismissed as counsel represented. Summary judgment was granted, and summary judgment was granted by the district court on the merits after the district court found that Stewart Title as a whole did not owe a duty to Ms. Williams. Right. So that negligence issue never really got resolved. Whether there was negligence or not was not itself resolved, and it was not itself the basis. And you said we're not negligent. You said we're not negligent, but our sub might have been. Right. There was clarity all along from our side of it on who did what acts. There was never an argument that we're not vicariously liable. What about your 30B6 depot? Your opponent said SDC is our agent for the purpose of issuing the insurance product. What they do before then, and if they've taken action to lie, you know, that's their issue. They're responsible for themselves. Right. So that's exactly the point. As part of this case, there were allegations that the closing agent made some representations, made some statements at the time of closing that were beyond the scope of her representation. So there was fraud allegations against her. So what we made very plain is they are absolutely our title-issuing agent. With respect to issuing the title insurance, with respect to conducting the title search, with respect to writing the closing documents, having those closing documents signed, 100% absolutely our agent. If they said or did anything other than that, intentional torts beyond that, that's beyond the scope of what they're allowed to do for us. But all of that is completely beside the point, Your Honor, because these claims on these facts were litigated to a jury. Ms. Williams argued to a jury that the title search was negligent. Does this case sound in indemnification? It does, Your Honor. It's a breach of contract which has an indemnification provision. And was that submitted to the Colorado courts? It was and is. It was submitted to the trial courts. We prevailed. It was appealed. We prevailed. It's now pending in the Supreme. What does that have to do, and I know you say that multiple times in your brief, and I'm a little bit confused by what that has to do with the actual elements of whether there was privity here. Same claims versus whether there was privity among these two parties. So I argue there's privity. I think there's a distinction, and you never make it in your brief. So I appreciate the distinction when you talk about claims and issues being whether or not there's privity in the law, and this gets really complex and hairy because it's always factually intensive. But this case is so much simpler than that because every single action that's being alleged is the same action itself. So you don't have to get to claims. You don't have to get to issues. Point me to some cases that suggest that that factors into that two-factor analysis. Yeah, and I would respond to that by saying, unfortunately, despite our best efforts, we scoured national case law and have never seen a case where a parent has been sued, lost, and then the subsidiary was sued for the exact same conduct. I have never found a court one way or the other where anyone has ever tried that. So for that reason, I don't have case law to present to you other than common sense. Those factual issues were presented. It's not like we're saying steward title guarantee had one role, steward title company played a different role, and we litigated the liability of the actions of guarantee but not company. That's exactly the opposite of what happened. We litigated. The jury decided. The Court of Appeals is in the process of finalizing the very actions that Ms. Williams tries to assert here. That was the basis of the trial court's decision to dismiss the case. The trial court said the factual allegations are near identical. And, in fact, in the initial complaint, they were identical. It was a verbatim cut and paste of the same complaint with steward title guarantee company replaced with steward title company. There's just no principle of law that allows you to try the same case twice. And I want to make just a very quick point so we're all clear on this. Herein lies part of the absurdity of this position. If my client were to lose this position here, if this court were to rule there's clearly no privity between the two, that would be extremely detrimental for Ms. Williams. We would then proceed in trial court in this federal case, no privity between guarantee and company, and all of a sudden when the Supreme Court, if it does deny the petition for certiorari, we're going to issue preclude Williams from asserting any of her defenses. She's going to be found to have breached the contract. She's going to have been found to have intentionally and knowingly withheld information. She was found to have committed fraud and she was held to punitive damages. Now some of that was reversed, but if there's no privity, then Ms. Williams is going to wind up subject to liability for the same actions against the same people for the same time, only if there's no privity we get to collect the judgment twice. As much as I would like that result, it's simply not what the law allows. You've litigated it once, the same actions, the same consequences has been decided by a jury. It has been taken up on appeal and it is still being taken up on appeal. Again, what should happen here is issue preclusion, claim preclusion. That's the clearer way to cut this. Unfortunately, the appellate process is a long one, and so until that is fully exhausted, we don't have that option. Could we remand to the district court once that happens if we haven't ruled yet? I was frankly hoping we would get a ruling from the Supreme Court to just say there's an alternative basis now to confirm and you should remand to the trial court to get that confirmation. Yeah, you couldn't raise it here because it's not final, so that would be the only option. Again, that goes back to Your Honor's point of saying there's doctrines of abstention that apply and we need to figure out in the worst case scenario, if we're ruling there is no privity, which I just don't understand how you get to when you're basing both actions on the claims on the same acts, but regardless, I mean, again, why was I in trial for weeks if I, with steward title guarantee, couldn't have been held liable for the acts of steward title company? Those are the only acts in question to the jury in Boulder. Why were we there if we couldn't have been held liable for that? It's hard to understand. But regardless, if the court does not affirm on the Rule 13 basis, I believe the best course of action for the court would be an instruction to remand with an instruction to the trial court to abstain until we get final determination from the Supreme Court before the appeals, until the appeals are fully exhausted, and then revisit the issue of whether or not these claims should be somehow dismissed or issue precluded, claim precluded, or whatever. I don't think you need to get there because counterclaim Rule 13 is so clear. I've got a couple of minutes left, and I know you want to hear more about it, so I'll tell you that very quickly. I think that a very important doctrine as well as the wrong doctrine. This is a continued argument under the doctrine. The wrong of it. The physical doctrine that nature abhors a vacuum. I'm sorry? Nature abhors a vacuum. Yes. That is to say it's kind of a first cousin of the Peter principle. If there's three minutes to go, you've got to talk. I'm on a billable clock, Your Honor. That's another twist on the same doctrine. I do think this is important because this is raised quite a lot in litigation these days. I don't know that it's a new trend, but it feels to be one from where I stand as a defense counsel. What we see is people bringing this wrong of another doctrine, and very quickly wrong of another deals with a scenario such as if a perpetrator steals the identity of a victim, the victim ends up in litigation to defend actions for judgment creditors and so on. The expenses of defending that is recoupable. That is an actual damage that you can recover in court. That's the wrong of another. The wrong of another has forced you into litigation. In this case, Williams has alleged that she was damaged in two ways. One, she had to pay her own legal fees for defending the Boulder County action. And two, she had to pay my fees for litigating the Boulder County action. So the only damages that Williams alleges that she suffered is the fact that a jury held her to have committed fraud in three counts, her actions to be so abhorrent as to warrant a punitive award, and that she breached a contract. Now, it's true the court of appeals said you don't get both contract and tort, but it doesn't change the fact. That's why Williams was liable for my attorney's fees, and it's why Ms. Williams was liable for the judgment, because she committed a wrong. It could be reversed, and if it is, she won't be liable for it, and her damages go away to zero. But if it's not reversed, Ms. Williams only alleged damages in this case, or that she has to pay a judgment for the fraud that she committed. That is not actionable, and it certainly doesn't rise to the level of establishing federal jurisdiction. So the fact that we're here to talk troubles me greatly. And I don't know the trial court really fully wrestled with the issue enough, but the wrong of another doctrine is one that we're seeing quite a lot of, and it would be helpful for this court to announce its principles that, look, when somebody is a defendant in an action found liable for breach of contract and material fraud in order to pay attorney's fees as a result of that, she cannot then say, I get to recoup those damages in an action against the subsidiary of the parent that I wronged, breached the contract with, and defrauded. That's simply not the principle. With that, I have an amazing amount of time left up, and I will yield back to the court. Thank you, Your Honor. Thank you. Did counsel have additional time? Time has expired. Counsel are excused. The case is submitted.